```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE EASTERN DISTRICT OF VIRGINIA
                              Norfolk Division


L. M. SYKES, ET. AL.,            :
                                 :
              Plaintiffs,        :
                                 :
v.                               :        Civil Action No. 2:05cv289
                                 :
WILLIAM MEYLER, ET. AL.,         :
_____  :

              Defendants.
```

## OPINION AND ORDER

Minority shareholders whose investment is damaged by the malfeasance or misfeasance of corporate officers/directors typically assert their rights via a derivative suit.  However, this procedural vehicle has many disadvantages, particularly when the corporation is closely held.  The injured shareholder must satisfy a number of conditions to maintain a derivative suit, including making prior demand on the company's Board of Directors.  See Del. Ch. Ct. R. 23.1; Va. Code Ann. § 13.1-672.1 (2006); see also Tooley v. Donaldson, Lufkin & Jenrettte, Inc., 845 A.2d 1031, 1036 (Del. 2004) (listing requirements necessary to file and maintain a derivative action in Delaware).  In addition, the minority shareholder must fund the litigation and do so without the lure of a class action to induce contingency representation.

The disadvantages continue even after the minority shareholder of a closely held corporation wins a derivative suit. Any recovery goes to the corporation, not to the plaintiff. Tooley, 845 A.2d at 1036. If the majority dominated Board elects even to distribute the recovery, it must be split pro rata among the shareholders. In closely held corporations, this often results in a distribution of money back to the dishonest or grossly negligent officer/director.

To circumvent these disadvantages, minority shareholders of a closely held corporation sometimes file suit in their own name. Because these "direct actions" have the potential to disadvantage creditors and other shareholders, a majority of courts examine such actions carefully to prevent the plaintiff from usurping what should be a corporate asset. See, e.g., Tooley v. Donaldson, Lufkin & Jenrette, 845 A.2d 1031 (Del. 2004); Simmons v. Miller, 261 Va. 561, 544 S.E.2d 666 (2001); but see Barth v. Barth, 659 N.E. 2d 559, 562 (Ind. 1995) (recognizing closely held corporation exception permitting maintenance of individual claim for breach of fiduciary duty); 2 Principles of Corporate Governance, Analysis - and Recommendations § 7.01(d) (Am. Law Inst.) (advocating closely held corporation exception).

The plaintiffs in this action, L.M. Sykes, Dorothy Sykes, Alan Thornton, John Dinsmore, Richard Cullen, and John Myers (the "Virginia Shareholders") own stock in a closely held Delaware corporation named Asset Advisory Corporation ("AAC"). The Virginia Shareholders filed a direct action against the

2

corporation's directors, alleging waste and breach of fiduciary duty.  Plaintiffs claim as damages the amount that they lost on their investments in AAC.  Because the injuries asserted by the Virginia Shareholders derive solely from injury to the corporation, the Court **GRANTS** defendants' Motion To Dismiss. (Docket No. 35).

## I.   Factual and Procedural History

ACC operated primarily on the internet under the domain name, "InvestorAdvice.com."  AAC generated revenue by licensing its primary asset of value, a computer software program capable of analyzing trends in stock prices.  The computer program was developed by the corporation's Chief Executive Officer, Lawrence Silberstein.  AAC licensed the program from CEO Silberstein.

The Virginia Shareholders acquired shares of ACC during the 1990s.  In August 2000, AAC's accountant recommended that "AAC purchase outright the proprietary computer software developed by Mr. Silberstein which drove the "InvestorAdvice.com" website and was the primary source of AAC's revenue."  (Second Amended Complaint, ¶ 1).  An independent appraiser valued the software at $162 million and the Board approved its purchase during a meeting held on August 15, 2000.  (Id.).

AAC began to market a private placement offering in September 2000.  The offering Memorandum listed the software as a corporate asset.  (Id. and Exhibit B).  However, the private placement failed to raise additional capital, and the corporation

3

began to flounder from lack of liquidity. To make matters worse, CEO Silberstein was out of the country on vacation during most of the fall of 2000. (Id. ¶ 2). AAC ceased operations in October or November of 2000. (Id.). The Delaware Secretary of State ordered the corporation dissolved in March 2002 for failure to pay annual franchise taxes. (Id. ¶ 6).

The Virginia Shareholders repeatedly attempted to contact management and the Board during AAC's financial crisis, but were rebuffed at every turn. (Id. ¶ 2). Between November 2000 and January 2001, plaintiffs Sykes and Myler even offered to loan money to the corporation in order to recapitalize it. (Id. ¶ 4). CEO Silberstein and the Board of Directors, including defendants Myler and Feldman, failed to follow up on these offers.

In the spring of 2001, the Virginia Shareholders began asking pointed questions about what happened to AAC. Plaintiff Sykes, in particular, demanded that the Board make a report to the shareholders. No report was ever made. (Id. ¶ 5). On October 7, 2002, the Virginia Shareholders increased the pressure by making a formal shareholder demand for documents. The Board ignored this demand. (Id. ¶ 7). The Virginia Shareholders made a second formal demand for documents on December 12, 2002. The Board ignored this demand as well. (Id. ¶ 8). All the while, someone (presumably CEO Silberstein) continued to operate the InvestorAdvice.com web site. (Id. ¶ 10).

The Virginia Shareholders filed a direct action against the members of AAC's Board on June 21, 2004 in the Circuit Court of

the City of Virginia Beach, Virginia.  (Docket No. 1).  In addition to directors Myler and Feldman, the Virginia Shareholders named as defendants directors Dr. Israel Plasner and Dr. Jerome Wakefield.  The suit alleged that the defendants violated Virginia corporate law by wasting AAC's corporate assets, by failing to prevent CEO Silberstein from misappropriating the software program and by failing to honor the shareholder demands for documents.

Defendants removed the Virginia Beach action to this court.  (Docket No. 1).  By Order dated June 28, 2005, the Court dismissed Drs. Plasner and Wakefield for lack of personal jurisdiction.  (Docket No. 15).  The Court also granted defendants Myler's and Feldman's Rule 12(b)(6) motion, but gave the Virginia Shareholders leave to amend.  (Id.).[1]  The Court advised plaintiffs that Delaware law governed their claims and explained the differences between a direct action and a derivative action.

Plaintiffs' Amended Complaint (Docket No. 21) again alleged a direct action, but this time asserted causes of action based on Delaware law.  The Court again cautioned plaintiffs about the difference between a direct action and a derivative action and granted defendants' Rule 12(b)(6) motion.  (Docket No. 33).  The

---

[1] The Court also disqualified plaintiff John Dinsmore, Esquire, from representing the Virginia Shareholders because he was a witness in the case.  (Docket No. 15).  Plaintiff L.M. Sykes thereafter began representing himself, pro se, and did an excellent job of arguing a complex legal issue.

5

Court gave plaintiffs one last opportunity either to assert a derivative action or to allege the individual injury necessary to maintain a direct action under Delaware law.  Plaintiffs' Second Amended Complaint (Docket No. 34) is now before the Court on defendants' Motion to Dismiss (Docket No. 35).

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of an action if the plaintiff fails to state a claim upon which relief may be granted.  The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint.  Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).  The Court will grant a motion to dismiss for failure to state a claim only if "'it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief.'" CTI/DC, Inc. v. Selective Ins. Co. of Amer., 392 F.3d 114, 117-18 (4th Cir. 2004)(quoting Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)).  When considering a motion to dismiss, the Court must accept all well-pleaded allegations as true and view the complaint in a light most favorable to plaintiff.  CTI/DC, Inc., 392 F.3d at 118.

### III. Analysis

Under Delaware law,[2] a minority shareholder's ability to maintain a direct action (rather than a derivative action) "turns <u>solely</u> on the following questions: (1) Who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) Who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" <u>Tooley</u>, 845 A.2d at 1033. In order to maintain a direct action, the shareholder's injury must be independent of the corporation's injury. <u>Id.</u> at 1039. It cannot be a result of the injury to the corporation. <u>Id.</u> at 1038; <u>accord Grimes v. Donald</u>, 673 A.2d 1207, 1213 (Del. 1996); <u>Kramer v. Western Pac. Indus., Inc.</u>, 546 A.2d 348, 352 (Del. 1988) ("Whether a cause of action is individual or derivative must be determined from the 'nature of the wrong alleged,' and the relief, if any, which could result if plaintiff were to prevail.")(citation omitted). The shareholder also must demonstrate that the board breached a duty owed to him, not a duty owed to the corporation. <u>Tooley</u>, 845 A.2d at 1039.[3]

---

[2]Because AAC is organized under and exists by virtue of a Delaware statute and because the direct action vs. derivative action question involves an issue of substantive corporate law, rather than a procedural issue, the Court must apply Delaware law. <u>Bagdon v. Bridgestone/Firestone, Inc.</u>, 916 F.2d 379, 382-83 (7th Cir. 1990).

[3]Interestingly, Delaware law permits a shareholder to maintain a direct action for harm done to the corporation if the only relief sought is equitable in nature. <u>Grimes v. Donald</u>, 673 A.2d 1027, 1213 (Del. 1996) (cited with approval in <u>Tooley</u>, 845 A.2d at 1038).

7

The Delaware standard for distinguishing direct from derivative actions precludes the Virginia Sharholders from bringing this suit in their individual capacities.  Plaintiffs accuse the board of, <u>inter alia</u>, failing to prevent Mr. Silberstein from absconding with the InvestorAdvice.com software, failing to raise additional capital to keep the corporation from going out of business, and failing to manage the corporation in a businesslike manner.  None of these allegations assert the breach of a fiduciary duty owed directly to a shareholder; rather, each allegation asserts a wrong perpetrated against AAC.

For example, the stolen software was property owned by AAC and any negligence leading to its conversion constitutes a tort against the corporation.  Similarly, the failure to raise enough capital to continue the corporation's business may constitute a breach of the duty of care owed by the Board to AAC, but it is clearly not a direct harm to the shareholders.  Mismanaging the corporation is likewise a harm done to AAC.  <u>Kramer v. Western Pacific Industries, Inc.</u>, 546 A.2d 348, 353 (Del. 1988); <u>Bokat v. Getty Oil Co.</u>, 262 A.2d 246, 249 (Del. 1970).  Thus the answer to the first question in <u>Tooley</u> - Who was harmed? - is clear:  the corporation.

By implication any remedy for the harm done also belongs to the corporation.  Nonetheless, plaintiffs seek to recoup for themselves the original value of their shares.  Under the facts alleged in the Second Amended Complaint, any loss in the value of plaintiffs' stock falls upon all shareholders equally as a

consequence of the injuries inflicted on the corporation. Delaware courts have consistently held that breaches of the fiduciary duty of care which devalue a corporation's stock are wrongs against the corporation that must be recovered by the corporation. See, e.g., Bokat, 262 A.2d at 249, overruled on other grounds by Tooley, 845 A.2d at 1037; Litman v. Prudential-Bache Properties, Inc., 611 A.2d 12, 16 (Del. Ch. 1992); accord Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc., 854 A.2d 121, 167-68 (Del Ch. 2004)(holding that where harm to shareholders is entirely contingent on harm to the corporation the claim is derivative). Thus, the answer to the second dispositive question in Tooley - Who would recover? - is again clearly the corporation. Because plaintiffs fail to allege an injury to themselves independent of the injury to the corporation, they are precluded from bringing this action directly.

The Delaware Supreme Court has observed that "the decision whether a suit is direct or derivative may be outcome determinative." Tooley, 845 A.2d at 1036. This case proves the wisdom of the Court's observation. The amount of money necessary to prosecute a derivative action against defendants Myler and Feldman would far outstrip the losses suffered by the Virginia Shareholders. Moreover, the defendants, who presumably still serve as directors of AAC, could vote not to distribute to the shareholders any of the derivative recovery. The Virginia Shareholders might "prevail" in a derivative action, but their

victory would be pyrrhic.  While their decision to pursue this case as a direct action has proven unsuccessful, it was the only economically sensible litigation strategy.

## IV.  Conclusion

For the reasons stated above, defendants Myler's and Feldman's Motion To Dismiss with prejudice is **GRANTED**.

The Clerk is hereby **DIRECTED** to forward a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED**.

```
            /s/
      Walter D. Kelley, Jr.
   UNITED STATES DISTRICT JUDGE
```

Norfolk, Virginia
September 29, 2006